UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 19-22680-CIV-MARTINEZ-OTAZO-REYES

MIGUEL VILARINHO, an individual,

    Plaintiff,

vs.

PALMETTO SPORT CARS, INC.,
a Florida corporation, and
WORLD FINANCE GROUP, LLC,
a Florida limited liability company,

    Defendants.
_____/

**MEMORANDUM IN OPPOSITION TO WORLD FINANCE GROUP, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW**

    Plaintiff/Counter-Defendant, Miguel Vilarinho, an individual ("Mr. Vilarinho"), by and through his undersigned attorney, pursuant to Rules 7.1 and 56.1, Local Rules of the United States District Court, Southern District of Florida, files this his Memorandum of Law in Opposition to World Finance Group, LLC's Motion for Partial Summary Judgment as to Count I (Breach of Contract) of Lender/Counter-Plaintiff's Counterclaim ("Summary Judgment Motion") [ECF No. 36] filed herein by Defendant/Counter-Plaintiff, World Finance Group, LLC, a Florida limited liability company ("WFG" or "Finance Company"). In the instant memorandum, the following matters of record will be referred to:

- Declaration of Miguel Vilarinho in Opposition to Motion for Partial Summary Judgment ("Vilarinho Declaration") filed contemporaneously herewith; and

- Deposition of Corporate Designee of WFG and Palmetto Sports Group, LLC, taken on February 17, 2020 ("WFG Deposition"); and

- Affidavit of Carlos Rios in Support of World Finance Group LLC's Motion for Partial Summary Judgment ("Rios Affidavit").

### I.  FAILURE OF WFG TO COMPLY WITH LOCAL RULES AS TO STATEMENT OF MATERIAL FACTS

Local Rule 56.1 (a) requires that a motion for summary judgment and the opposition to it be accompanied by a "separate and contemporaneously filed and served Statement of Material Facts." The Statement of Material Facts is further required to be "served as a separate document" and shall contain "specific, pinpoint references to particular parts of record material." Rule 56.1 (b), S.D. Fla.

The Summary Judgment Motion filed by WFG failed to comply with the Local Rules. While WFG has provided a "Undisputed Material Facts" within its motion ("WFG Statement"), the proffer did not comply with the form and content requirements of Rule 56.1 [Summary Judgment Motion- p. 2-3].

While WFG filed the Rios Affidavit in support of the Summary Judgment Motion, there were no references in the WFG Statement that constituted "specific, pinpoint references" as mandated by Rule 56.1.  As detailed below, WFG failed to identify the factual basis for its claimed "damages" and conveniently avoids providing details as to the alleged default, including the fact that Mr. Vilarinho has made all of his payments, has possession of his car and has never received a notice of default.

In so far as WFG has provided the WFG Statement, *albeit* without the mandated detail required under Local Rules, Mr. Vilarinho is compelled to separately serve his complaint Statement of Disputed Facts ("Vilarinho Statement of Disputed Facts").

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.' " *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

"At summary judgment, courts are required to view the evidence in the light most favorable to the nonmovant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant. However, an inference based on speculation and conjecture is not reasonable." *Id.* "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir.

3

2005) (emphasis in original)." *Santiago v. Jaguar Therapeutics, LLC*, 2019 WL 2170738, *3 (S.D. Fla. May 17, 2019).

## III. LEGAL ARGUMENT

### A. WFG WAIVED THE RIGHT TO DECLARE A DEFAULT BY AGREEING TO ACCEPT IRREGULAR PAYMENTS FROM MR. VILARINHO.

#### 1. The Course of Dealing Between the Parties Established a Waiver of the Right to Declare a Default.

The case law in Florida is clear that a creditor may conduct itself in such a manner that it either waives its right to declare a contract in default or is estopped to do so without first giving the debtor notice of its intent to declare a default. *Montgomery Enterprises, Inc. v. Atlantic National Bank of Jacksonville,* 338 So.2d 1078, 1080 (Fla. 1st DCA 1976). When a creditor's conduct in habitually accepting late payments rises to the level of a waiver, then notice of intent to declare a default is ineffective to revoke such waiver and allow repossession; the creditor must pursue other remedies, such as a suit on the note. *Thomas N. Carlton Estate v. Keller,* 52 So.2d 131 (Fla.1951).

WFG has accepted and continues to accept late payments from Mr. Vilarinho. As detailed in the Vilarinho Declaration, Mr. Vilarinho owns a small plumbing company and his compensation depends on irregular payments from third-party contractors. As a result, shortly after he purchased the car, Mr. Vilarinho spoke to WFG to inform WFG that he would be paying WFG at irregular periods and that his payments would be for irregular amounts. [Vilarinho Declaration- ¶33]. WFG agreed to accept and did accept the irregular payments [Vilarinho Declaration- ¶34].

4

**2. The Finance Agreement provides for payment deferral.**

Mr. Vilarinho is mindful that the loan agreement has what is generally referred to as an "anti-waiver" provision. Specifically, the agreement provides: "*we may or refrain from enforcing any of our rights under the agreement without losing them.*" Mr. Vilarinho is also mindful that "Florida courts have consistently enforced [anti-waiver] clauses." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1182 (11th Cir.2010) (alteration in original) (quoting *Nat'l Home Cmtys., LLC v. Friends of Sunshine Key, Inc.,* 874 So.2d 631, 634 (Fla. 3d DCA 2004)) (internal quotation marks omitted).

But the Finance Agreement also provides for payment deferral:

> e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
>
> If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

("Deferral Provision")

[Summary Judgment Motion- Ex. A]

The Deferral Provision allowed Mr. Vilarinho to request a "deferral of the scheduled due date of all or part of a payment." He did this at the onset of his relationship with Defendants.

5

Only after Mr. Vilarinho learned of the fraud of the Dealership and asserted his rights in this lawsuit did WFG renege on its agreement to deferral of the payment date.

### B.  WFG HAS FAILED TO PROVIDE COMPETENT, UNDISPUTED EVIDENCE TO SUPPORT ITS CLAIM.

#### 1.  The Rios Affidavit is Not Based on Competent Knowledge and is Contradicted by Prior Testimony.

The only evidentiary support for the Summary Judgment Motion is the Rios Affidavit. While Mr. Rios may be the "managing member" of WFG, he is not the person "with the most knowledge" as to the performance of the parties under the Finance Agreement, including what was paid and when. The person with that "knowledge" is the only other employee of WFG: Ester Alayeto ("Ms. Alayeto") [WFG Deposition- p. 30- l. 6-25; p. 117- l. 18- 11].

On February 4, 2019, Mr. Vilarinho served a Notice of Taking Deposition Duces Tecum as to the corporate designee of WFG ("WFG Deposition Notice"). A copy of the WFG Deposition Notice is attached hereto as Exhibit "A."  Pursuant to the WFG Deposition Notice, Mr. Vilarinho requested that WFG designate a qualified witness to testify to *inter alia*:

> 1. An Account history of the RISC between Plaintiff and WFG or its assignee.
> 2. All facts regarding the Account including all payments made under the RISC, an Account history, any purported default(s), and any fees or charges assessed thereunder.

WFG produced Mr. Rios. When asked about the factual basis for the Counterclaim, Mr Rios lacked the ability to provide any details about the loan, including what was owed, what was paid or what was claimed:

6

When asked about the remaining balance owed, Mr. Rios testified:

```
18 Q. So how many payments are left on
19 Mr. Vilarinho's loan at the present time?
20 A. I couldn't answer that 100 percent today what
21 payments are left.
22 Q. I'm sorry?
23 A. Whatever payments are left, I couldn't answer
24 that question today.
25 Q. Okay. Well, it's a 60-month loan; right?

1 A. Okay.
2 Q. And you would agree with me he has made the
3 February payment; correct?
4 A. I couldn't answer that question.
```

(WFG Deposition- p. 116, l. 18 to p. 117, l. 4)

When asked what records he would need to look at to inform him of what was owed on the loan, Mr. Rios stated:

```
23 Q. Okay. And what records would you need to
24 look at to inform you how many payments are remaining
25 on Mr. Vilarinho's loan?

1 A. I would have to get the exact payoff --
2 Q. Okay.
3 A. -- amount, which I might have the exact
4 payment amount. I couldn't tell you the exact payoff.
5 MR. MARCUS: It doesn't matter. If you don't
6 know sitting here today, you don't have to -- if
7 you don't know, you don't know. It's a matter of
8 proof anyway. There will be no question as to
9 what it is. Records don't lie.
10 Q. What payments is Mr. Vilarinho missing
11 through today's date?
12 A. I couldn't tell you exactly.
13 Q. What records do you need to refer to?
```

7

```
14 A. I would have to go back to the office and see
15 the records to see what he has paid and has not paid.
16 Q. Well, I'm taking the deposition of the
17 finance company today.
18 A. Okay.
```

(WFG Deposition- p. 119, l. 23 to p. 120, l. 18)

As to missed payments, Mr. Rios stated:

```
1 Q. So now that you have had an opportunity to
2 refresh your memory concerning Bates stamp number 143
3 through 148, what payments are missing that
4 Mr. Vilarinho did not make?
5 A. Whatever the amount is. I don't know. I
6 couldn't answer this right now, to tell the truth. I
7 would have to go one by one.
8 But, as you see the history here, he pays
9 whenever he feels like it, you know. If you go to
10 your page 143, you know, $1,500, $1,500, $1,490,
11 $1,500. Then you got $1,000. Then you got $2,855.
12 Then you have an amount of 1,500. You know, you look
13 at it by the month.
14 Q. Well, who else can I ask questions what
15 payments were missed other than you?
16 A. Esther.
17 Q. Excuse me?
18 MR. MARCUS: Esther Alayeto.
19 Q. You didn't ask Esther about what loan
20 payments were missed before coming here today?
21 A. No. I came straight over here.
22 Q. You didn't prepare for today's deposition by
23 inquiring of others before you came here to testify on
24 behalf of the finance company; correct?
25 A. No. I believe he made a payment last -- I

1 think he made it last week. The end of last week he
2 made a payment.
```

(WFG Deposition- p. 123, l. 1 to  p. 124, l. 2)

As seen above, Mr. Rios lacked adequate knowledge to provide details of the claim of WFG. A corporation has an affirmative duty to provide a witness to testify on its behalf to bind the corporation to deposition questions.  *QBE Ins. Corp. v. Jorda Enterprises, Inc*., 277 F.R.D. 676, 688 (S.D. Fla. 2012). As Mr. Rios was wholly unprepared to testify as to the claim of WFG, WFG should be prohibited from now providing evidence that its designee should have been able to provide testimony concerning.

A cursory review of the thin Rios Affidavit also underscores the lack of knowledge.  Rather than describe the details of the claim of WFG, Mr. Rios simply states the amount of the "arrearage" with nothing else [Rios Affidavit- ¶8]. Mr. Rios does not even say that he reviewed the account history or that the records were kept accurately. The Rios Affidavit does not meet the standard for proof under the  Fed. R. Civ. P. 56 (c)(4).

**2.   CFS has failed to Meet its Burden as to Proving Damages.**

a.   Inadequacy of Proof

In addition to the Rios Affidavit, the Motion for Partial Summary Judgment was supported by the following matters:

- Exhibit A- a poor photocopy of the Finance Agreement; and
- Exhibit B- consisting of a note in some unknown person's handwriting and a computer printout with loan information ("Disputed Accounting").

The Disputed Accounting seems to be a summary of what WFG contends it is owed. It is unverified and is not a "business record" that would otherwise be admissible. Most telling is the fact that Mr. Rios did not authenticate or even reference the documents in his affidavit.

Even the "proof" advanced by WFG is inconsistent without explanation.  While the

scribbling in the Disputed Accounting states that $6,474.54 is owed, the Rios Affidavit claims that $7,953.60 is owed. Neither proffered amount is supported by any detail.

### b. As to "Past Due Interest"

The Disputed Accounting claims that $2,056.31 is owed as "past due interest." There is no detail offered to explain the rate, the dates of accrual or even the principal upon which the interest is based. The unauthenticated computer printout does not help explain what is owed.

### c. As to "Disputed Collection Fees"

The Disputed Accounting appears to include claims for "late fees" and "NSF"[1] fees ("Disputed Collection Fees") but does not provide any details that would reasonably inform the Court and Mr. Vilarinho of the legitimacy of the fees. As an example, according to Mr. Vilarinho's records, he had one check returned in February 2017 as a result of an error in his transferring funds which he promptly corrected [Vilarinho Declaration- ¶ 24]. But WFG is asserting in its Disputed Accounting that there 18 "NSF Fees" for which it is claiming $630. Again, the unauthenticated computer printout again does not help explain what is owed.

### d. As to "Disputed Repossession Fees"

The Disputed Accounting also references that WFG is apparently claiming that it is entitled to recover $1,000 as a "repo fee." The WFG Statement provides that "*WFG has been forced to repossess the subject vehicle from Vilarinho due to non-payment and was thus forced to incur repossession **costs**.*" (emphasis added). But WFG does not provide details of the date of the repossession, the vendor to whom the *costs* were paid, or the purpose of the costs. The unauthenticated computer printout does not describe such fees. Rather, WFG just put the cryptic reference to a "repo fee" on a handwritten "summary" to feign that there is something owed.

---

[1] Mr. Vilarinho is assuming that "NSF" is meant to refer to returned checks.

WFG failed to inform the Court that the subject vehicle was repossessed four years ago. Contrary to the unverified WFG Statement that claimed that there was a monetary default, the car was repossessed without notice as a result of a lapse of insurance coverage. The email string between Mr. Vilarinho and WFG concerning the repossession is attached to the Vilarinho Declaration as Exhibit "B." [Vilarinho Declaration- ¶ 28].

More disturbing is the fact that Mr. Vilarinho paid the recovery costs to WFG when he had his car returned. A copy of the receipt that that Mr. Vilarinho received from WFG for $2,855.99 for "payment and repo fee" is attached to the Vilarinho Declaration as Exhibit "C."

When viewed in the light most favorable to WFG, WFG is trying to spin up a claim by creating faux fees on the loan. Indeed, in addition to not providing details as to its alleged claim for "fees," WFG also failed to inform the Court that the car was returned and that he had continued to pay WFG.

### C. WFG HAS FAILED TO OVERCOME THE AFFIRMATIVE DEFENSES BASED ON THE APPLICATION OF THE SO-CALLED "FTC HOLDER RULE" AND THE CONTRACT LANGUAGE

Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," WFG is subject to all claims and defenses of Mr. Vilarinho, as a consumer, which are available against the credit-seller, to-wit: Palmetto Sport Cars. Mr. Vilarinho recast his grievances against the dealership in his Affirmative Defenses as set-off defenses (DE 25). The Vilarinho Declaration supports the fraud claims against Palmetto Sports Cars.

The FTC Holder Rule entitles consumers such as Mr. Vilarinho to defend against lenders based on the fraud and misconduct of the seller. *See, e.g., Florida Auto Finance Corp. v. Reyes*, 710 So. 2nd 216, 218 (3rd DCA 1998) [ "The fraud committed by Schwag is a complete defense

to the action by FAF, the holder in due course, against Reyes. FAF was subject to the same claims and defenses that Reyes could have asserted against Schwag."]

The finance agreement at issue provides for such a preservation of rights:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

As WFG has not addressed the set-off defenses of Mr. Vilarinho (as contained in the First through Eighth Affirmative Defenses), WFG is not entitled to summary judgment.

## IV. CONCLUSION

As argued above, the Motion for Partial Summary Judgment was filed despite issues of material fact. The determination of this cause must be submitted to a jury.

>   */s/ Robert W. Murphy*_____
>   ROBERT W. MURPHY, ESQ.
>   Florida Bar No.: 717223
>   1212 S.E. 2nd Avenue
>   Fort Lauderdale, FL 33316
>   Telephone: (954) 763-8660
>   Facsimile: (954) 763-8607
>   rwmurphy@lawfirmmurphy.com
>   *Counsel for Plaintiff/Counter-Defendant*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the United States District Court, Southern District of Florida, CM/ECF system, on April 9, 2020, to counsel of record:

Alan K. Marcus, Esq.
Marcus Law Center, LLC
2600 Douglas Road, Suite 1111
Coral Gables, Florida 33134
E-Mail:  AMarcus@MarcusLawCenter.com

*Counsel for Defendants/Counter-Plaintiff*

                                                          /s/ *Robert W. Murphy*
                                                          Attorney